# SEEGERWEISS LLP

77 Water Street, New York, NY 10005    P 212.584.0700    F 212.584.0799    www.seegerweiss.com

March 24, 2014

**By Email and ECF**

Honorable Cathy Seibel
United States District Judge
Southern District of New York
Hon. Charles L. Brieant Jr. Federal
    Building and United States Courthouse
300 Quarropas Street
White Plains, NY 10601-4150

                      Re: *In re Mirena IUD Products Liability Litigation*,
                              No. 13-MD-2434 (CS) (LMS)

Dear Judge Seibel:

      The Plaintiffs' leadership respectfully submits this response to Defendants' March 17, 2014 letter, in which they assert their right to (i) depose individual Plaintiffs, treating physicians, and other case-specific fact witnesses prior to the selection of the Initial Disposition Pool ("IDP") on June 3, 2014; and (ii) contact Plaintiffs' treating physicians *ex parte*. For the reasons discussed below, the Court should reject Defendants' belated efforts[1] to conduct intensive case-specific depositions prior to IDP selection.

**I. Depositions of Case-Specific Witnesses Are Inappropriate Prior to IDP Selection**

      Although they argue that "discovery is necessary to inform IDP selection" and that they would be at a disadvantage in selecting cases for the IDP if they are not permitted to first depose two and one-half dozen plaintiffs (Letter at 2-3), Defendants sidestep the salient fact that they have already been provided abundant information by means of the exhaustive 30-page Plaintiff Fact Sheets ("Fact Sheets") completed by Plaintiffs, as well as extensive medical records that they have received through the authorizations that Plaintiffs furnished them.

      Defendants' suggestion that the Court has already endorsed individual Plaintiff depositions prior to IDP selection is inaccurate. They selectively quote a statement that the Court made at the first status conference (Letter at 1), but ignore that the discovery that the Court was discussing was in the context of the parties negotiating the content of Fact Sheets:

---

[1] As Plaintiffs noted in their March 18, 2013 letter (Doc. No. 767, at 2), Defendants did not even begin sending out letters requesting dates for depositions until the very end of February.

New York            Newark            Philadelphia

Honorable Cathy Seibel
March 24, 2014
Page | 2

> Just thinking ahead, however long it takes to get the generic discovery from
> Bayer, there's no reason why the Defendants can't start taking discovery from the
> Plaintiffs.  Have you -- and I recognize you haven't had authority and, so, you
> haven't done it yet, but are you going to work together on what you think the fact
> sheet should look like for each Plaintiff?

 May 17, 2013 Conf. Tr. 37:3-9.

Putting that aside, deposing individual Plaintiffs and other case-specific witnesses prior to IDP selection would be antithetical to the bellwether process and vastly inefficient.  The purpose of choosing an IDP is to streamline mass tort litigation by having a select number of cases serve as bellwethers for case-specific discovery, motion practice, and trial.  Deposing scores of plaintiffs and other case-specific witnesses before IDP selection simply defeats that purpose because it puts the proverbial cart before the horse.

Furthermore, the deposition of Plaintiffs and other case-specific witnesses in 25-30 cases (Letter at 2) greatly reduces the likelihood that the IDP selection process can be completed by June 3, 2014.  For this and similar reasons, MDL courts have routinely provided that depositions of individual plaintiffs should not be conducted until after bellwether cases have been selected. *E.g.*, *In re Tylenol (Acetaminophen) Mktg. Sales Practices, and Prods. Liab. Litig.*, MDL No. 2436, 2:13-md-0436-LS, CMO 15, § 4 (E.D. Pa. Oct. 4, 2013); *In re Fosamax (Alendronate Sodium) Prods. Liab. Litig. (No. II)* ("*Fosamax*"), MDL No. 2243, No. 3:08-cv-00008 (GEB) (LHG), CMO 4, § 9.1 (D.N.J.  July 14, 2011) (copies annexed collectively as Ex. A).  Those courts have recognized that in complex cases like the one here, involving hundreds (and often thousands) of plaintiffs, deposing case-specific witnesses prior to IDP/bellwether selection is expensive, time-consuming, and unproductive.

The two cases that Defendants cite (Letter 2), do not support their position.  In one, the court permitted depositions of plaintiffs after bellwether selection, not before.  *In re Yasmin and Yaz (Drospirenone) Mktg. Sales Practices, and Prods. Liab. Litig.*, No. 3:09-md-02100-DRH-PMF, MDL No. 2100, Am. CMO 24, §§ IV-V (S.D. Ill. Oct.13, 2010) (Ex. A).   In the other, the court provided for the creation of an initial discovery pool of cases, from which a later group of trial pool cases would presumably be chosen.  *In re Boston Scientific Corp. Pelvic Repair Sys. Prods. Liab. Litig.*, 2:12-md-02326-DRH-PMF, MDL No. 2326, PTO 32, §§ 4-5, 8-9 (S.D. W. Va. Jan. 18, 2013) (Ex. A).  Here, Defendants never proposed such a two-tier approach.

Finally, Defendants' contention that they need to depose individual Plaintiffs to be on an equal footing with Plaintiffs in the IDP selection process rings hollow not only because ample information has already been furnished to them, but also because they have failed to avail themselves of an opportunity to conduct depositions when it was afforded them.  In the cognate New Jersey centralized Mirena litigation, Judge Martinotti allowed Defendants to depose five plaintiffs of their choosing prior to IDP selection.   He conditioned that, however, on Defendants first providing Defendant Fact Sheets and the custodial files of the relevant sales representatives to Plaintiffs' counsel prior to those depositions.  *In re Mirena Litig.*, No. 297, Master Docket No. BER-L-4098-13, CMO 12, at 3 (N.J. Super. Ct. Jan. 14, 2014) (copy annexed as Ex. B).  Despite

13036-999

Honorable Cathy Seibel
March 24, 2014
Page | 3

as Ex. B). Despite this simple prerequisite, to date Defendants have declined to depose *any* of the New Jersey plaintiffs.

## II. The Court Should Not Permit *Ex Parte* Contact with Plaintiffs' Treating Physicians

Also without merit is Defendants' request to have *ex parte* communication with Plaintiffs' treating providers. Plaintiffs have not waived any doctor-patient privilege, and Defendants' attempts to contact these treating physicians runs counter to the "time honored" confidential nature of the doctor-patient relationship and inappropriate. *E.g.*, *In re Vioxx Prods. Liab. Litig.*, 230 F.R.D. 473, 476 (E.D. La. 2005); *In re Kugel Mesh Hernia Repair Patch Litig.*, 2008 WL 2420997, at *1 (D.R.I. Jan. 22, 2008); *In re Chantix Prods. Liab. Litig.*, No. 2:09-CV-2039-IPJ, MDL No. 2092, Order at 4-7 (N.D. Ala. June 30, 2011); *In re Human Tissue Prods. Liab. Litig.*, No. 2:06-135, MDL No. 1763, Order at 1 (D.N.J. Sept. 11, 2006); *In re Fosamax*, Order at 1-2 (D.N.J. May 2, 2012). (Copies of the three unpublished orders annexed collectively as Ex. C.) Because the individual states are conflicted regarding this privilege, this Court may, and should, prohibit such *ex parte* contact to protect Plaintiffs' rights.

Perhaps the best analysis of this issue comes from the oft-cited reasoning of Judge Fallon in *In re Vioxx Products Liability Litigation*. There, Judge Fallon initially permitted the defendants to contact the plaintiffs' physicians, but he reversed course after seeing the "unintended consequences" that this permission had caused:

> The Court, upon further reflection, now feels that the just option in this case is to protect the relationship between a doctor and patient by restricting defendants from conducting ex parte communications with Plaintiffs' treating physicians but allowing Plaintiffs' counsel to engage in ex parte interviews with those doctors who have not been named as defendants. This approach appears, at first glance, to be one sided and unfair. However, in actuality and as a practical matter, it is not. This modification does not leave the Defendants without any access to information. The Defendants still are entitled to all of the medical records of the Plaintiffs as well as the Plaintiff Profile Forms [*i.e.*, Fact Sheets] setting forth each Plaintiff's detailed medical history. The Defendants can also continue to exercise their right to depose the Plaintiffs' treating physicians or confer with them in the presence of Plaintiffs' counsel. Furthermore, as a practical matter, the Defendants already have information, including documentation, regarding what its representatives told the treating physicians about Vioxx. Therefore, the Defendants do not need the doctors to tell them in ex parte conferences what they already know.

*In re Vioxx Prods. Liab. Litig.*, 230 F.R.D. at 477.

Courts throughout the country have expressly adopted Judge Fallon's reasoning. *E.g.*, *In re Chantix*, *supra*; *In re Fosamax*, *supra*. Because Defendants have sufficient information in the Fact Sheets, Plaintiffs' medical records, and their own internal sales records, the Court should deny their request to also engage in *ex parte* communications with Plaintiffs' treating physicians.

13036-999

## Conclusion

For the foregoing reasons, the Court should deny Defendants' requests for pre-IDP depositions of Plaintiffs and other case-specific witnesses and for *ex parte* communications with treating physicians.

Respectfully,

Diogenes P. Kekatos
*Plaintiffs' Liaison Counsel*

| | |
|---|---|
| ANAPOL SCHWARTZ | PARKER WAICHMAN LLP |
| */s/ James R. Ronca* | */s/ Matthew J. McCauley* |
| James R. Ronca | Matthew J. McCauley |
| Plaintiffs' Co-Lead Counsel | Plaintiffs' Co-Lead Counsel |

MOTLEY RICE LLC
*/s/ Fred Thompson III*
Fred Thompson III
Plaintiffs' Co-Lead Counsel

Attachments

cc:   **By email (w/ attachments)**

Shayna S. Cook, Esq.
James Shepherd, Esq.
William P. Harrington, Esq.

13036-999