# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| )<br>)<br>AMANDA TRUITT )<br>)<br>    Plaintiff, )<br>)<br>)<br>v. )<br>)<br>BAYER HEALTHCARE )<br>PHARMACEUTICALS, INC. , BAYER )<br>PHARMA AG, and BAYER OY )<br>)<br>    Defendant. ) | Case No. 7:13-cv-07811<br><br>**SECOND AMENDED COMPLAINT** |

Plaintiff AMANDA TRUITT (referred to as "Plaintiff"), by and through her undersigned attorneys, hereby sues the Defendants, BAYER HEALTHCARE PHARMACEUTICALS, INC., BAYER PHARMA AG, AND BAYER OY (hereinafter referred to as "Defendant"), and alleges as follows:

## PARTIES AND CITIZENSHIP

1. At all times relevant hereto, Plaintiff was a resident and citizen of the State of Indiana.

2. Plaintiff was prescribed and used the defective and unreasonably dangerous product Mirena® (levonorgestrel-releasing intrauterine system). At all times relevant hereto, Mirena® was manufactured, designed, formulated, tested, packaged, labeled, produced, created, made, constructed, assembled, marketed, advertised, distributed and sold by Defendant.

3. Defendant Bayer Healthcare Pharmaceuticals Inc. ("Bayer") is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 6 West Belt Road, Wayne, New Jersey 07470.

4. Defendant does business throughout the United States including in the state of Indiana through the sale of Mirena® and other prescription drugs.

1

**5.** At all times relevant, Defendant was engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce throughout the United States, either directly or indirectly through third parties, subsidiaries or related entities, the contraceptive device, Mirena®.

**6.** Upon information and belief, Defendant BAYER PHARMA AG is a company domiciled in Germany and is the parent/holding company of Defendant BAYER HEALTHCARE PHARMACEUTICALS, INC.

**7.** Upon information and belief, at all relevant times, Defendant BAYER PHARMA AG has transacted and conducted business in the State of Indiana and derived substantial revenue from interstate commerce.

**8.** Upon information and belief, at all relevant times, Defendant BAYER PHARMA AG expected or should have expected that its acts would have consequences within the United States of America, and the State of Indiana in particular and derived substantial revenue from interstate commerce.

**9.** Upon information and belief, at all relevant times, Defendant BAYER PHARMA AG exercises dominion and control over Defendant BAYER HEALTHCARE PHARMACEUTICALS, INC.

**10.** Upon information and belief, at all relevant times, Defendant BAYER PHARMA AG exercises dominion and control over Defendant BAYER HEALTHCARE PHARMACEUTICALS, INC.

**11.** Upon information and belief, Defendant BAYER OY is organized and exists under the laws of Finland and is headquartered at Pansiontie 47 20210 Turku, Finland.

**12.** Upon information and belief, Defendant BAYER OY is the current owner of the trademark relating to MIRENA®.

**13.** Upon information and belief, at all relevant times, Defendant BAYER OY has transacted

and conducted business in the State of Indiana and derived substantial revenue from interstate commerce.

14. Upon information and belief, at all relevant times, Defendant BAYER OY expected or should have expected that its acts would have consequences within the United States of America, and the State of Indiana in particular and derived substantial revenue from interstate commerce.

15. At all times alleged herein, Defendants include and included any and all parents, subsidiaries, affiliates, division, franchises, partners, joint venturers, and organizational unites of any kind, their predecessors, successors and assigns and their officers, directors, employees, agents, representatives and any and all other persons acting on their behalf.

16. At all times relevant, Defendants were engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce throughout the United States, either directly or indirectly through third parties, subsidiaries or related entities, the contraceptive device, Mirena.

## JURISDICTION AND VENUE

17. This court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the amount in controversy as to Plaintiff exceeds $75,000.00, exclusive of interest and costs, and because Defendants are incorporated and have their principal place of business in states other than the state in which the named Plaintiff resides.

18. This Court has supplemental jurisdiction over the remaining common law and state claims pursuant to 28 U.S.C. § 1367.

19. Venue in this district is appropriate under 28 U.S.C.§1391 because defendants do business here.

## FACTUAL ALLEGATIONS

20. Plaintiff incorporates by reference all other paragraphs of this complaint as if fully set

forth herein, and further alleges as follows:

21.  Mirena® is an intrauterine system that is inserted by a healthcare provider during an office visit. Mirena® is a T-shaped polyethylene frame with a steroid reservoir that releases 20 μg/day of levonorgestrel, a prescription medication used as a contraceptive.

22.  The federal Food and Drug Administration (FDA) approved Defendants' New Drug Application for Mirena® in December 2000. Today, more than 2 million women in the United States use Mirena®. It has been used by more than 15 million women worldwide.

23.  The system releases levonorgestrel, a synthetic progestogen, directly into the uterus for birth control. Defendants admit it is not known exactly how Mirena® "works," but provide that Mirena® may thicken cervical mucus, thin the uterine lining, inhibit sperm movement and reduce sperm survival to prevent pregnancy.

24.  The Mirena® intrauterine device ("IUD") is designed to be placed within seven (7) days of the first day of menstruation and is approved to remain in the uterus for up to five (5) years. If continued use is desired after five years, the old system must be discarded and a new one inserted.

25.  The package labeling recommends that Mirena® be used in women who have had at least one child.

26.  Mirena®'s label does not warn about spontaneous migration of the IUD, but only states that migration may occur if the uterus is perforated during insertion.

27.  Mirena®'s label also describes perforation as an "uncommon" event, despite the fact that there are numerous women who have suffered migration and perforation post-insertion, clearly demonstrating this assertion to be false.

28.  Defendants have a history of overstating the efficacy of Mirena® while understating the potential safety concerns.

29.  In or around December 2009, Bayer was contacted by the Department of Health and

Human Services' Division of Drug Marketing, Advertising, and Communications (DDMAC) regarding a consumer-directed program entitled "Mirena Simple Style Statements Program," a live presentation designed for "busy moms." The Simple Style program was presented in a consumer's home or other private settings by a representative from "Mom Central," a social networking internet site, and Ms. Barb Dehn, a nurse practitioner, in partnership with Defendants.

30. This Simple Style program represented that Mirena® use would increase the level of intimacy, romance and emotional satisfaction between sexual partners. DDMAC determined these claims were unsubstantiated and, in fact, pointed out that Mirena®'s package insert states that at least 5% of clinical trial patients reported a decreased libido after use.

31. The Simple Style program script also intimated that Mirena® use can help patients "look and feel great." Again, DDMAC noted these claims were unsubstantiated and that Mirena® can cause a number of side effects, including weight gain, acne, and breast pain or tenderness.

32. The portion of the Simple Style script regarding risks omitted information about serious conditions, including susceptibility to infections and the possibility of miscarriage if a woman becomes pregnant on Mirena®.

33. Finally, Defendants falsely claimed that Mirena® required no compliance with a monthly routine.

## CASE SPECIFIC ALLEGATIONS

34. Plaintiff AMANDA TRUITT (Amanda Nelson at the time) received medical counseling and advice from gynecologist Cathy Carr, M.D. and Georgia Steinman, gynecological N.P., on or about April 30, 2009 at Planned Parenthood regarding Mirena IUD for contraception. Plaintiff's doctor and nurse practicioner discussed with her the purpose,

use, risks, and benefits of Mirena. Plaintiff was also given a Mirena medical consent form that she read and signed, and which was also signed by Ms. Steinman, N.P. The booklet and consent form were created and distributed by Defendants for the purpose of educating patients about Mirena IUD.

35. Dr. Carr and Ms. Steinman examined Plaintiff and reviewed her medical history and told Plaintiff she was a proper candidate for Mirena. Based on the information the Plaintiff learned from her doctor, nurse practitioner and the papers she was given, Plaintiff agreed to be implanted with the Mirena IUD that day.

36. Plaintiff was implanted with Mirena on or about April 30, 2009, she tolerated the procedure well and neither Plaintiff nor her physician nor nursing staff had any reason to suspect that any problems occurred with insertion, or that Mirena had caused any injury, including migration and/or perforation of her uterus.

37. Dr. Carr and Ms. Steiman told Plaintiff that the insertion had gone well and that there were no complications or problems. Plaintiff was instructed to check the Mirena strings monthly, to call her doctor's office if, in the next 3 days, she experienced severe cramps, heavy bleeding, or fever over 100 degrees, and was told to return in a few weeks for a medical check-up. She was also given two extra-strength Tylenol pills for cramping.

38. Based on the information Plaintiff learned from her doctor, nurse practitioner and the papers she was given, she understood, among other things, that there was a possibility of slight risk of Mirena migration and/or perforation as a result of the implanting procedure, but that if she did not experience severe cramps, heavy bleeding, or fever over 100 degrees in the next few days then she would be passed that risk. Plaintiff recovered from the implant procedure and did not experience any of those complaints.

39. Based on all this information, Plaintiff had no reason to suspect that once safely passed insertion the Mirena can spontaneously migrate and/or perforate her uterus causing

internal damage and requiring surgery to remove it. Plaintiff was given no warning such a post-insertion event could occur with using the Mirena as instructed.

40.    Plaintiff was unable to return for her medical check-up due to financial reasons, but did self check the IUD strings at least once a month and confirmed proper placement.

41.    During early July 2011, over two years after Mirena insertion, Plaintiff began to experience nausea and intermittent vomiting, and grew concerned that she may be pregnant. She was not experiencing any fever or vaginal bleeding. Plaintiff was seen by Dr. Carr and her nursing staff on or about July 7, 2011 and was told that the Mirena strings could not be seen, which meant that the IUD may have moved and that she may have an ectopic pregnancy. If true, the Mirena would have to be removed. Plaintiff was told to promptly go the to nearby emergency room for further treatment, including to determine whether she was pregnant and to remove the IUD.

42.    On or about July 8 and 9, 2011, Plaintiff was seen by emergency room doctors and staff ,as well as gynecologist Nathalie Castillo, M.D., at IUH West Hospital for potential ectopic pregnancy and IUD removal. A pelvic examination revealed the Mirena strings were not visible. The exam significantly exacerbated Plaintiff's pelvic pain although she was having no vaginal bleeding or fever.

43.    After further examination and testing, the Mirena IUD was visualized in Plaintiff's left lower abdomen and that she had one or more ovarian cysts. The IUD had perforated her uterus and had migrated. Dr. Castillo performed surgery to remove the Mirena. Plaintiff was negative for any pregnancy.

44.    Plaintiff was concerned whether this event would affect her ability to become pregnant and have children again, and she asked Dr. Castillo about what Mirena had done to her. Dr. Castillo told Plaintiff that Mirena caused her cervix to thin and caused the cysts to form, and before she considers becoming pregnant again, she will have to be off Mirena

sufficient time for her cervix to thicken and the cysts to shrink and go away.

45. At no time did any healthcare provider ever tell Plaintiff that the Mirena IUD was defective in its warnings, design, or manufacture. At no time did any healthcare provider warn or in the information provided by Defendants did it warn Plaintiff that sometime after insertion, Mirena can spontaneously perforate her uterus and migrate to her left lower abdomen and cause medical injuries requiring hospitalization and surgical treatments. Had plaintiff been so warned by either her healthcare providers or in the information created and supplied by Defendants, Plaintiff would have declined to use Mirena IUD and would had chosen a different for of contraceptions.

46. Although Plaintiff followed all instructions accompanying the Mirena® and used the Mirena® as directed, after implant of the Mirena® Plaintiff suffered serious and life-threatening side effects and injuries.  Personal injuries suffered by Plaintiff include, but are not limited to, pain and suffering, permanent bodily impairment, mental anguish and diminished enjoyment of life.

47. Plaintiff did not suspect, nor did she have reason to suspect, that wrongdoing had caused her injuries, nor did Plaintiff have reason to suspect the tortious nature of the conduct causing the injuries, until recently. Plaintiff had no knowledge of the defects in the Mirena® and the wrongful conduct of Defendants as set forth herein, nor did Plaintiff have access to the information regarding other injuries and complaints in the possession of Defendants. Additionally, Plaintiff was prevented from discovering this information sooner because Defendants herein misrepresented and continue to misrepresent to the public, to the medical profession and to Plaintiff that the Mirena® is safe and free from serious defects and side effects, and Defendants have fraudulently concealed facts and information that could have led Plaintiff to an earlier discovery of potential causes of action.

**FIRST CAUSE OF ACTION**
**DEFECTIVE MANUFACTURING**

48.  Plaintiff incorporates by reference all other paragraphs of this complaint as if fully set forth herein, and further alleges as follows:

49.  At all relevant times, Defendants were engaged in the business of selling Mirena® in the state of Indiana.

50.  The Mirena® manufactured, designed, formulated, tested, packaged, labeled, produced, created, made, constructed, assembled, marketed, advertised, distributed and sold by Defendants were expected to, and did, reach Plaintiff without substantial change in the condition in which it was sold.

51.  Defendants have introduced a product into the stream of commerce which is dangerous and unsafe in that the harm of Mirena® outweighs any benefit derived therefrom. The unreasonably dangerous nature of Mirena® caused serious harm to Plaintiff.

52.  Defendants manufactured, marketed, promoted and sold a product that was not merchantable and/or reasonably suited to the use intended, its condition when sold was the proximate cause of the injuries sustained by the Plaintiff, and Defendants placed Mirena® into the stream of commerce with wanton and reckless disregard for the public safety.

53.  As a direct and proximate result of Plaintiff's use of Mirena®, she developed excruciating pain, endured extreme suffering, and was forced to undergo surgical removal of the Mirena®.

54.  Defendants knew and, in fact, advertised and promoted the use of Mirena® despite their failure to test or otherwise determine the safety and efficacy of such use. As a direct and proximate result of Defendants' advertising and widespread promotional activity, physicians began commonly prescribing this product as safe and effective.

55.  Despite the fact that evidence existed that the use of Mirena® was dangerous and likely

to place users at serious risk to their health, Defendants failed to disclose and warn of the health hazards and risks associated with the Mirena® and in fact acted to deceive the medical community and public at large, including all potential users of Mirena®, including Plaintiff, by promoting it as safe and effective.

56. Defendants knew or should have known that physicians and other healthcare providers began commonly prescribing this product as a safe and effective contraceptive despite its lack of efficacy and potential for serious permanent side effects.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory and statutory damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

## SECOND CAUSE OF ACTION
## DESIGN DEFECT

57. Plaintiff incorporates by reference all other paragraphs of this complaint as if fully set forth herein, and further alleges as follows:

58. At all relevant times, Defendants were engaged in the business of selling Mirena® in the state of Indiana.

59. The Mirena® manufactured, designed, formulated, tested, packaged, labeled, produced, created, made, constructed, assembled, marketed, advertised, distributed and sold by Defendants were expected to, and did, reach Plaintiff without substantial change in the condition in which it was sold.

60. The foreseeable risks associated with the design or formulation of the Mirena® include, but are not limited to, the fact that the design or formulation of Mirena® is more dangerous than a reasonably prudent consumer would expect when used in an intended or reasonably foreseeable manner.

61. Defendants manufactured, designed, formulated, tested, packaged, labeled, produced,

created, made, constructed, assembled, marketed, advertised, distributed and sold a

product that was not merchantable and/or reasonably suited to the use intended, and its

condition when sold was the proximate cause of the injuries sustained by Plaintiff.

62.    As a direct and proximate cause of Plaintiff's use of Mirena®, she was forced to undergo

surgical removal of the Mirena®, and developed severe pain.

63.    Defendants placed Mirena® into the stream of commerce with wanton and reckless

disregard for public safety.

64.    Defendants knew or should have known that physicians and other healthcare providers

began commonly prescribing this product as a safe and effective contraceptive despite its

lack of efficacy and potential for serious permanent side effects.

65.    There are contraceptives on the market with safer alternative designs in that they provide

equal or greater efficacy and far less risk.

66.    As a direct and proximate result of one or more of these wrongful acts or omissions of the

Defendants, Plaintiff suffered profound injuries, required medical treatment, and incurred

and continues to incur medical and hospital expenses.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory

and statutory damages, together with interest, costs of suit, attorneys' fees and all such

other relief as the Court deems appropriate pursuant to the common law and statutory

law.

### THIRD CAUSE OF ACTION
### NEGLIGENCE

67.    Plaintiff incorporates by reference all other paragraphs of this complaint as if fully set

forth herein, and further alleges as follows:

68.    Upon information and belief, Defendants failed to use reasonable care in designing

Mirena® in that they:

A.    failed to properly and thoroughly test Mirena® before releasing the drug

to market;

B.    failed to properly and thoroughly analyze the data resulting from the premarketing tests of Mirena®;

C.    failed to conduct sufficient post-market testing and surveillance of Mirena®;

D.    designed, manufactured, marketed, advertised, distributed, and sold Mirena® to consumers, including Plaintiff, without an adequate warning of the significant and dangerous risks of Mirena® and without proper instructions to avoid the harm which could foreseeably occur as a result of using the drug;

E.    failed to exercise due care when advertising and promoting Mirena®; and,

F.    negligently continued to manufacture, market, advertise, and distribute Mirena® after Defendants knew or should have known of its adverse effects.

69.    A reasonable manufacturer would or should have known that the risks created by Mirena® are unreasonably greater than that of other contraceptives and that Mirena® has no clinical benefit over such other contraceptives that compensates in whole or in part for the increased risk.

70.    As a direct and proximate result of one or more of these wrongful acts or omissions of the Defendants, Plaintiff suffered profound injuries, required medical treatment, and incurred and continues to incur medical and hospital expenses.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory and statutory damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

## FOURTH CAUSE OF ACTION
## FAILURE TO WARN

71.  Plaintiff incorporates by reference all other paragraphs of this complaint as if fully set forth herein, and further alleges as follows:

72.  Mirena® is a defective and therefore an unreasonably dangerous product, because its labeling fails to adequately warn consumers and prescribers of, among other things, the risk of migration of the product post-insertion, uterine perforation post-insertion, or the possibility that device complications such as migration and perforation may cause abscesses, infections, require surgery for removal and/or may necessitate hysterectomy, oophorectomy, and other complications.

73.  Defendants manufactured, designed, formulated, tested, packaged, labeled, produced, created, made, constructed, assembled, marketed, advertised, distributed and sold, and otherwise released into the stream of commerce the pharmaceutical, Mirena®, and in the course of same, directly advertised or marketed the product to consumers or persons responsible for consumers, and therefore had a duty to warn of the risks associated with the use of Mirena®.

74.  Mirena® was under the exclusive control of Defendants and was unaccompanied by appropriate warnings regarding all of the risks associated with its use. The warnings given did not accurately reflect the risk, incidence, symptoms, scope or severity of such injuries to the consumer or physicians. The promotional activities of Defendants further diluted or minimized the warnings given with the product.

75.  Defendants downplayed the serious and dangerous side effects of Mirena® to encourage sales of the product; consequently, Defendants placed their profits above theircustomers' safety.

76.  Mirena® was defective and unreasonably dangerous when it left the possession of

Defendants in that it contained warnings insufficient to alert Plaintiff to the dangerous risks and reactions associated with it. Even though Defendants knew or should have known of the risks associated with Mirena®, they still failed to provide warnings that accurately reflected the signs, symptoms, incident, scope, or severity of the risks associated with the product.

77. Plaintiff used Mirena® as intended and as indicated by the package labeling or in a reasonably foreseeable manner.

78. Plaintiff could not have discovered any defect in Mirena® through the exercise of reasonable care.

79. Defendants, as a manufacturer of pharmaceutical drugs, are held to the level of knowledge of an expert in the field and, further, Defendants had knowledge of the dangerous risks and side effects of Mirena®.

80. Plaintiff did not have the same knowledge as Defendants and no adequate warning was communicated to her physician(s).

81. Defendants had a continuing duty to warn consumers, including Plaintiff and her physicians, and the medical community of the dangers associated with Mirena®, and by negligently and/or wantonly failing to adequately warn of the dangers associated with its use, Defendants breached their duty.

82. Although Defendants knew, or were reckless in not knowing, of the defective nature of Mirena®, they continued to manufacture, design, formulate, test, package, label, produce, create, made, construct, assemble, market, advertise, distribute and sell Mirena® without providing adequate warnings and instructions concerning the use of Mirena® so as to maximize sales and profits at the expense of the public health and safety, in knowing, conscious, and deliberate disregard of the foreseeable harm caused by Mirena®.

83. As a direct and proximate result of one or more of these wrongful acts or omissions of the

Defendants, Plaintiff suffered profound injuries as alleged herein, required medical treatment, and incurred and continues to incur medical and hospital expenses.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory and statutory damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

## FIFTH CAUSE OF ACTION
## STRICT LIABILITY

84. Plaintiff incorporates by reference all other paragraphs of this complaint as if fully set forth herein, and further alleges as follows:

85. Defendants are the manufacturer and/or supplier of Mirena® and is strictly liable to Plaintiff for manufacturing, designing, formulating, testing, packaging, labeling, producing, creating, making, constructing, assembling, marketing, advertising, distributing, selling and placing Mirena® into the stream of commerce.

86. Mirena®, manufactured and/or supplied by Defendants, was defective in design or formulation in that when it left the hands of the manufacturer and/or suppliers, it was unreasonably dangerous. It was more dangerous than an ordinary consumer would expect and more dangerous than other contraceptives.

87. Mirena® was defective in design or formulation in that, when it left the hands of the manufacturer and/or suppliers, the foreseeable risks exceeded the benefits associated with the design or formulation.

88. Mirena® was also defective due to inadequate warnings or instructions because the manufacturer knew or should have known that Mirena® created, among other things, a risk of perforation and/or migration and associated infections or conditions and the Defendants failed to adequately warn of these risks.

89. Mirena® was defective due to inadequate pre-marketing testing.

90.    Defendants failed to provide adequate initial warnings and post-marketing warnings or instructions after the manufacturer and/or supplier knew or should have known of the extreme risks associated with Mirena® and continues to promote Mirena® in the absence of those adequate warnings.

91.    As a direct and proximate result of one or more of these wrongful acts or omissions of the Defendants, Plaintiff suffered profound injuries, required medical treatment, and incurred and continues to incur medical and hospital expenses.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory and statutory damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

**SIXTH CAUSE OF ACTION**
**BREACH OF IMPLIED WARRANTY**

92.    Plaintiff incorporates by reference all other paragraphs of this complaint as if fully set forth herein, and further alleges as follows:

93.    Defendants manufactured, designed, formulated, tested, packaged, labeled, produced, created, made, constructed, assembled, marketed, advertised, distributed and sold Mirena® as safe for use by the public at large, including Plaintiff, who purchased Mirena®. Defendants knew the use for which its product was intended and impliedly warranted the product to be of merchantable quality, safe and fit for use.

94.    Plaintiff reasonably relied on the skill and judgment of the Defendants, and as such its implied warranty, in using Mirena®.

95.    Contrary to same, Mirena® was not of merchantable quality or safe or fit for its intended use, because it is unreasonably dangerous and unfit for the ordinary purpose for which it was used.

96. As a direct and proximate result of one or more of these wrongful acts or omissions of the Defendants, Plaintiff suffered profound injuries, required medical treatment, and incurred and continues to incur medical and hospital expenses.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory and statutory damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

## SEVENTH CAUSE OF ACTION
## BREACH OF EXPRESS WARRANTY

97. Plaintiff incorporates by reference all other paragraphs of this complaint as if fully set forth herein, and further alleges as follows:

98. The aforementioned designing, manufacturing, marketing, formulating, testing, packaging, labeling, producing, creating, making, constructing, assembling, advertising, and distributing of Mirena® were expressly warranted to be safe by Defendant for Plaintiff and members of the public generally. At the time of the making of these express warranties, Defendants had knowledge of the foreseeable purposes for which Mirena® was to be used and Defendants warranted Mirena® to be in all respects safe, effective and proper for such purposes.

99. Mirena® does not conform to these express warranties and representations because Mirena® is not safe or effective and may produce serious side effects.

100. As a direct and proximate result of one or more of these wrongful acts or omissions of the Defendants, Plaintiff suffered profound injuries, required medical treatment, and incurred and continues to incur medical and hospital expenses.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory and statutory damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems appropriate pursuant to the common law and statutory

law.

## EIGHTH CAUSE OF ACTION
## NEGLIGENT MISREPRESENTATION

101. Plaintiff incorporates by reference all other paragraphs of this complaint as if fully set forth herein, and further alleges as follows:

102. Defendants, having undertaken the designing, manufacturing, marketing, formulating, testing, packaging, labeling, producing, creating, making, constructing, assembling, advertising, and distributing of Mirena®, owed a duty to provide accurate and complete information regarding Mirena®.

103. Defendants falsely represented to Plaintiff that Mirena® was a safe and effective contraceptive option. The representations by Defendants were in fact false, as Mirena® is not safe and is dangerous to the health of its users.

104. At the time the aforesaid representations were made, Defendants concealed from healthcare providers and their patients, including Plaintiff and her physicians, information about the propensity of Mirena® to cause great harm. Defendants negligently misrepresented claims regarding the safety and efficacy of Mirena® despite the lack of information regarding same.

105. These misrepresentations were made by Defendants with the intent to induce Plaintiff to use Mirena®, which caused her injury.

106. At the time of Defendants' misrepresentations and omissions, Plaintiff was ignorant of the falsity of these statements and reasonably believed them to be true.

107. Defendants breached their duties to Plaintiff by providing false, incomplete and/or misleading information regarding their product. Plaintiff reasonably believed Defendants' representations and reasonably relied on the accuracy of those representations when agreeing to treatment with Mirena®.

108. As a direct and proximate result of one or more of these wrongful acts or omissions of the

Defendants, Plaintiff suffered profound injuries, required medical treatment, and incurred and continues to incur medical and hospital expenses.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory and statutory damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

## NINTH CAUSE OF ACTION
## FRAUDULENT MISREPRESENTATION

109. Plaintiff incorporates by reference all other paragraphs of this complaint as if fully set forth herein, and further alleges as follows:

110. Defendants, having undertaken the designing, manufacturing, marketing, formulating, testing, packaging, labeling, producing, creating, making, constructing, assembling, advertising, and distributing of Mirena® described herein, owed a duty to provide accurate and complete information regarding Mirena®.

111. Defendants fraudulently misrepresented material facts and information regarding Mirena® including, but not limited to, its propensity to cause serious physical harm.

112. At the time of Defendants' fraudulent misrepresentations and omissions, Plaintiff was unaware and ignorant of the falsity of the statements and reasonably believed them to be true.

113. Defendants knew this information to be false, incomplete and misleading.

114. Defendants intended to deceive and mislead Plaintiff so that she might rely on these fraudulent misrepresentations.

115. Plaintiff had a right to rely on and did reasonably rely upon Defendants' deceptive, inaccurate and fraudulent misrepresentations.

116. As a direct and proximate result of one or more of these wrongful acts or omissions of the Defendants, Plaintiff suffered profound injuries, required medical treatment, and incurred

and continues to incur medical and hospital expenses.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory and statutory damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

## TENTH CAUSE OF ACTION
## FRAUD BY CONCEALMENT

117. Plaintiff incorporates by reference all other paragraphs of this complaint as if fully set forth herein, and further alleges as follows:

118. Defendants had a duty and obligation to disclose to Plaintiff that Mirena® was dangerous and likely to cause serious health consequences to users when used as prescribed.

119. Defendants intentionally, willfully, and maliciously concealed and/or suppressed the facts set forth above from Plaintiff with the intent to defraud her as herein alleged.

120. Neither Plaintiff nor her physicians were aware of the facts set forth above, and had they been aware of said facts would not have prescribed this product.

121. As a proximate result of the concealment and/or suppression of the facts set forth above, Plaintiff has proximately sustained damage, as set forth herein.

122. As a direct and proximate result of one or more of these wrongful acts or omissions of the Defendants, Plaintiff suffered profound injuries, required medical treatment, and incurred and continues to incur medical and hospital expenses.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory and statutory damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

## RELIEF REQUESTED

WHEREFORE Plaintiff prays for judgment against Defendants and, as

appropriate to each cause of action alleged and as appropriate to the standing of the Plaintiff, as follows:

A.  Past and future general damages, the exact amount of which has yet to be ascertained, in an amount according to proof at the time of trial;

B.  Past and future economic and special damages according to proof at trial;

C.  Loss of earnings and impaired earning capacity according to proof at trial;

D.  Medical expenses, past and future, according to proof at the time of trial;

E.  Past and future pain and suffering damages, including mental and, emotional stress arising from Plaintiff s physical injuries, according to proof at the time of trial;

F.  Equitable relief as requested and/or as the Court deems just and proper;

G.  Declaratory judgment that Defendants are liable to Plaintiff for all future evaluative, monitoring, diagnostic, preventative, and corrective medical, surgical, and incidental expenses, costs and losses caused by Defendants' wrongdoing;

H.  Medical monitoring, whether denominated as damages or in the form of equitable relief according to proof at the time of trial;

I.  Costs of suit incurred herein;

J.  Pre-judgment interest as provided by law;

K.  Punitive damages; and

L.  Such other and further relief as the Court may deem just and proper.

Respectfully submitted,

By: /s/ _Shezad Malik
Dr. Shezad Malik, Esq.
Texas Bar No. 24053337
DR. SHEZAD MALIK LAW FIRM P.C.
4925 Greenville Ave. Suite 320
Dallas, TX 75206
Phone: 888-210-9693 ext 2
Fax: 888-210-9693
drmalik@shezadmalik.com

**Attorney for Amanda Truitt**

## DEMAND FOR JURY TRIAL

Demand is hereby made for a trial by a jury.

Respectfully submitted,

By: /s/  Shezad Malik
Dr. Shezad Malik, Esq.
Texas Bar No. 24053337
DR. SHEZAD MALIK LAW FIRM P.C.
4925 Greenville Ave. Suite 320
Dallas, TX 75206
Phone: 888-210-9693 ext 2
Fax: 888-210-9693
drmalik@shezadmalik.com
**Attorney for Amanda Truitt**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 26, 2014, a true copy of the *Amended Complaint for the Mirena IUD Product Liability Litigation* was filed. Notice of this filings will be sent by operation of the Court's electronic filings system to all parties indicated on the electronic filings receipt. Parties may access this filing through the Court's system.

**By: /s/ Shezad Malik**
**Shezad Malik MD JD**