November 20, 2014

Honorable Cathy Siebel                                                                  US Courthouse
United States District Judge                                                         300 Quarropas Street
Southern District of New York                                                    White Plains, NY 10601-4150
Hon. Charles L. Brieant Jr. Federal Building

Re:    *In re: Mirena Products Liability Litigation*, 13-MD-2434, 13-MC-2434
        Jessica Davis v. Bayer HealthCare Pharmaceuticals Inc., et al.,
        Case No. 7:14-cv-06200-CS

Dear Judge Siebel:

Pursuant to Case Management Order 22A, Plaintiff Jessica Davis ("Plaintiff") respectfully submits this letter in opposition to Defendant's October 21, 2014 letter attempting to lay grounds for dismissal of this action.

***Deutsch v. Turner Corp.* is Critically Distinguishable, Rendering the Application of California's Statutes of Limitation to an Action that Involves no California Parties and That Will *Never* be Litigated in California Courts Completely Unjust and Unreasonable.**

Defendant's letter relies entirely on *Deutsch v. Turner Corp.*, 324 F.3d 692 (9th Cir. 2003) for the contention that where a conflict between two states regards a statute of limitations issue, California will generally apply its own law under the "governmental interests" analysis. Indeed, all cases cited by Defendants hinge on this single case and the "Deutsch analysis."

Defendant's superficial gloss on the applicable law ignores the balance of California jurisprudence. California's "governmental interests" analysis looks to the interests of the litigants and the involved states to determine the proper applicable law. *See McGhee v. Arabian American Oil Co.*, 871 F.2d 1412, 1422 (9th Cir. 1989); *In re Yagman*, 796 F.2d 1165, 1170 (9th Cir. 1986), *cert. denied*, 484 U.S. 963 (1987); *Offshore Rental Co. v. Continental Oil Co.*, 22 Cal.3d 157, 161 (1978). In making this comparative impairment analysis, the court must determine "the relative commitment of the respective states to the laws involved" and consider "the history and current status of the states' laws" and "the function and purpose of those laws."*Offshore Rental Co. v. Continental Oil Co.*, 22 Cal.3d 157, 166 (1978).

An analysis of *Deutsch,* especially when examined as to the function and purpose of the limitation of actions, reveals that the case is factually inapposite to the instant case. *Deutsch* dealt with multiple parties where some of the defendants and plaintiffs were both California residents in a California court where the Ninth Circuit invalidated a California statute that extended the limitations period for claims brought by World War II forced laborers, while also creating a cause of action for such claims. Moreover, *Deutsch* regarded an attempt to bring claims that "have been stale for several decades ... [therefore] Only an extraordinarily strong interest of a foreign state in keeping these claims alive could overcome the presumption that California will not hear claims that have been stale for so long under its own law." *Deutsch,* 324 F.3d at 717.

Here, there are no California parties. Plaintiff is a South Carolina resident and has filed a severed and amended complaint against Defendants which are not domiciled in California. *Patton v. Schneider Nat. Carriers, Inc.*, 2009 WL 545779, at *2 (C.D. Cal. 2009) ("a corporation is a citizen of *both* its state of incorporation and its principal place of business".) All of Plaintiff's injuries occurred in South Carolina. In fact, the public policy arguments as enumerated in *Deutsch* predicating California's interest in applying its own law have absolutely no bearing given that this matter was never intended to be litigated in California and will in fact, *never be*. Plaintiff's claims were initiated in the United States District Court for the Central District of California on April 18, 2014 as a multi-plaintiff action entitled *Battiest et al v. Bayer HealthCare Pharmaceuticals Inc.* (Case No. 2:14-cv-03022-PSG-AS). Plaintiff expected her case to be efficiently transferred to the MDL upon filing, which it was. On June 2, 2014 the action was transferred and opened in MDL 2434. Upon transfer to the MDL, and pursuant to CMO 20, Plaintiff's action was severed and amended on July 18, 2014. As intended to by CMO 20, Plaintiff's action will *never* be remanded back to California courts upon the completion of pretrial discovery in the MDL; in fact, it will be remanded to South Carolina as it is presently a severed action pertaining to a South Carolina resident who sustained injuries in that state.

The Restatement (Second) of Conflict of Laws § 142 (1988) provides:

> In general, ***unless the exceptional circumstances of the case make such a result unreasonable:*** (1) The forum will apply its own statute of limitations barring the claim; (2) The forum will apply its own statute of limitations permitting the claim unless: (a) maintenance of the claim would serve no substantial interest of the forum; and (b) the claim would be barred under the statute of limitations of a state having a more significant relationship to the parties and the occurrence. (emphasis added).

Under certain circumstances, the forum will entertain a claim that is barred by its own statute of limitations but not by that of some other state. Thus, the suit will be entertained when the forum believes that under the special circumstances of the case, dismissal of the claim would be unjust. *See* Restatement (Second) of Conflict of Laws § 142 (1988). The Restatement provides scant instructions with respect to how and when its unreasonableness provision should apply. Dismissal of Plaintiff's claims will be entirely unjust because the forum state's interest per *Deutsch* is inapplicable given the specific circumstances here. "[I]f the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter," the forum receives "minimal consideration." *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir.1987); *see Saleh v. Titan Corp.*, 361 F.Supp.2d 1152, 1157 (S.D.Cal.2005) (the forum state receives less deference "where the action has little connection with the chosen forum"). *Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*, 472 F. Supp. 2d 1183, 1191 (S.D. Cal. 2007). California has no interest in torts in other states arising from business practices within those states. *Id.* Indeed, each of the cases cited by Defendants which rely on *Deutsch* were litigated in California courts, having one or more California parties. California's interest against clogging up its courts with stale cases is highly inapplicable to the specific facts here because: (i) Plaintiff's case was filed with the expectation that it would be transferred to the MDL immediately, which it was; (ii) Plaintiff's claims are presently being litigated in the Southern District of New York; (iii) Plaintiff's claims will be remanded back and tried in South Carolina if and when pre-trial discovery is completed in the MDL; and (iv) there are no California parties in this lawsuit.

**South Carolina Has A Prevailing Interest In Applying Its Statute of Limitations**

California "continue[s] to recognize that a jurisdiction ordinarily has 'the predominant interest' in regulating conduct that occurs within its borders." *McCann v. Foster Wheeler LLC, 25 P.3d 533, 537*(internal citations omitted); *See also Castro v. Budget Rent–A–Car Sys., Inc.*, 154 Cal. App. 4th 1162, 1182 (2007) (holding Alabama's interests predominant over California's where auto accident occurred in Alabama, even though California resident victim could be financial burden on California); *Hernandez v. Burger*, 102 Cal. App. 3d 795, 802 (1980) ("[W]ith respect to regulating or affecting conduct within its borders, the place of the wrong has the predominant interest.").

South Carolina has substantial interest in having the laws of its State apply to Plaintiff's claims. *See Johnston v. Commercial Travelers Mut. Acci. Asso.*, 242 S.C. 387, 393 (S.C.1963) ("Plaintiff was a resident of this State[…] plaintiff was injured here and this is the proper forum under our decisions in which to bring suit[…] South Carolina has a manifest governmental interest in protecting the rights of its citizens.") In 1974, the South Carolina Legislature adopted the *Restatement (Second) of Torts* § 402A (1965), and identified its comments as legislative intent. S.C.Code Ann. §§ 15–73–10–30 (2005). The comments in section 402A demonstrate the state's emphasis on protecting its residents from the sale of harmful and defective products.

Plaintiff's physician in Camden, South Carolina implanted Plaintiff's Mirena® IUD on May 19, 2011. (Amend Compl. ¶ 27). The same implanting physician diagnosed Plaintiff with migration of the device on May 27, 2011, and the IUD was surgically removed that vary same day. (Amend. Compl. ¶ 28). South Carolina's interest in having its substantive laws applied to Plaintiff's case is considerably high as the entire nucleus of events giving rise to Plaintiff's claims including the consumption, use and resulting injuries from the IUD occurred there. Under South Carolina's § 15-3-530, Plaintiff's claims are timely as the statute of limitations would have accrued on May 27, 2014, three (3) years after the date of diagnosis and removal of the IUD under the *Truitt* Order; the trigger date of Plaintiff's statute of limitations would have been on May 27, 2011. Plaintiff filed her products liability action against Defendants on April 18, 2014, *before* the accrual of the statute of limitations.

In light of the longstanding deference courts show to foreign states to regulate activities therein, South Carolina's interest in applying its own laws to regulate conduct that occurred within its borders and to regulate suits against companies doing business there, predominates over California's interests. *See Deirmenjian v. Deutsche Bank AG*, 548 Fed. Appx. 461;

See *Reich v. Purcell*, 67 Cal.2d 551, (1967) ("[The foreign state where the harm occurred] is concerned with conduct within her borders and as to such conduct she has the predominant interest of the states involved."); *Cable*, 93 Cal.App.3d at 394, 155 Cal.Rptr. 770. See *McCann*, 225 P.3d 533, 537.

**Even If the Court Determines That California's Statute of Limitation Should Apply, the *Truitt* Order Is Inapplicable Under California's Discovery Rule**

California law is distinguishable from the reasoning articulated in the *Truitt* Order analyzing Texas and Indiana law. The California discovery rule does not trigger accrual of a cause of action under California law unless the plaintiff has some reason to suspect actual wrongdoing. Thus, when a plaintiff, through reasonably diligent investigation, discovers only that they have been injured but not that the injury may have a wrongful cause, then the clock will not yet begin to run. West's Ann.Cal.C.C.P. § 335.1. This is distinguishable from Texas and Indiana law requiring merely an injury, and nothing more, to trigger the statute of limitations per *Truitt*. The Supreme Court of California has even confirmed that a plaintiff's *ignorance of wrongdoing involving a product's defect will usually delay accrual because such wrongdoing is essential to that cause of action. Fox v. Ethicon Endo-Surgery, Inc*, 35 Cal.4th 797 (2005). See also *Hendrix v. Novartis Pharmaceutical Corp*. 975 F.Supp.2d 1100, 1107 (2013). Unlike the laws of Texas and Indiana, the California discovery rule tolls accrual until the plaintiff "is aware of her injury *and* its negligent cause." *Jolly v. Eli Lilly & Co.*, 44 Cal.3d 1103, 1109 (1988); See also *Hopkins v. Dow Corning Corp.*, 33 F.3d 1116, 1121 (1994) (certiorari denied). The application of California's discovery rule would require the court to delve into Plaintiff's specific knowledge and understanding of the defect of the Mirena at the time of the injury- namely at the time of diagnosis and removal.

**Defendant Should Be Judicially Estopped From Asserting California's Statute of Limitations to Plaintiff's Claims**

At the April 2, 2014 Mirena MDL status conference, Defendant raised the issue of improper joinder under Rule 20, stating that the multi-plaintiff actions included "completely different facts, and claims [that] do not arise out of the same transaction or occurrence." (See Exh. A at 41:17-19). Defendant urged the Court to sever these multi-plaintiff actions and noted that this would be something that the Court will have to deal with at the time of remand, if the litigation gets there. (*Id.* at 42:6-19). As a result, the Court entered CMO 20 requiring the service of severed and amended complaints, to which Plaintiff complied.

"[J]udicial estoppel, 'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.'" *New Hampshire v. Maine*, 532 U.S. 742, 749, (2001) (internal quotations omitted). It is an equitable doctrine invoked "not only to prevent a party from gaining an advantage by taking inconsistent positions, but also because of 'general considerations of the orderly administration of justice and regard for the dignity of judicial proceedings,' and to 'protect against a litigant playing fast and loose with the courts.'" *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001) (internal quotations omitted). Here, Defendant should be judicially estopped from asserting that California's statute of limitations applies to Plaintiff's claims because it is entirely inconsistent with its earlier position that the multi-plaintiff action filing in California was improper. Indeed, the Court was persuaded by Defendant's earlier position and entered CMO 20 requiring the filing of severed and amended complaints as a result. Defendant will clearly impose a critically unfair detriment on Plaintiff if not estopped. See *New Hampshire*, 532 U.S. at 750; See also *Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983, 993-94 (9th Cir. 2012).

**Amendment to Complaint**
If the Court determines that California's statute of limitations shall apply, Plaintiff respectfully seeks to amend the complaint to specify the (1) time and manner of her discovery of the design defect, and (2) her inability to have made this discovery earlier.

Based on the foregoing, Plaintiff respectfully requests that the Court deny Defendant's letter motion in its entirety.

Respectfully submitted,

*/s/ L. Melidonian*

**Lina B. Melidonian**
Kabateck Brown Kellner, LLP
*Counsel for Plaintiff*

November 20, 2014
Page 4


Cc: Shayna S. Cook
Goldman Ismail Tomaselli Brennan and Baum LLP
564 W Randolph St.
Chicago, IL 60661
scook@goldmanismail.com

EXHIBIT A

```
                                                                    1

 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------------x

 3   IN RE:  MIRENA ,

 4                                              13 MD 2434

 5   ------------------------------------x

 6
                                    United States Courthouse
 7                                  White Plains, New York

 8                                  April 2, 2014

 9
     B e f o r e:
10
        HON. CATHY SEIBEL,         HON. LISA MARGARET SMITH
11      District Court Judge       United States Magistrate Judge

12

13   A P P E A R A N C E S:

14   JAMES RONCA
     MATTHEW J. MCCAULEY
15   DIOGENES P. KEKATOS
     FRED THOMPSON III
16   ROGER SMITH
     CATHERINE HEACOX
17   TINA GLANDIAN
          Attorneys for Plaintiffs
18

19   SHAYNA S. COOK
     JAMES SHEPHERD
20   WILLIAM HARRINGTON
          Attorneys for Defendants
21

22

23

24
     ANGELA A. O'DONNELL, RPR
25   Official Court Reporter


              Angela O'Donnell, RPR, 914-390-4025
```

2

```
 1                    P R O C E E D I N G S
 2            THE COURT:  Good morning everyone.  Counsel, why
 3   don't you put your appearances on the record.
 4            MS. COOK:  Good morning, your Honor.  Jim Ronca
 5   for plaintiffs.
 6            MR. MCCAULEY:  Matthew McCauley for plaintiffs.
 7            MR. KEKATOS:  Good morning, your Honors.
 8   Diogenese Kekatos for the plaintiffs.
 9            MR. THOMPSON:  Good morning, Fred Thompson for
10   plaintiffs.
11            THE COURT:  Who's with us in the jury box?
12            MS. HEACOX:  Catherine Heacox from Lanier for the
13   plaintiffs.
14            MS. GLANDIAN:  Good morning, your Honor, Tina
15   Glandian from Geragos & Geragos for the plaintiffs.
16   Application is currently pending.
17            THE COURT:  Yes, I have to sign that.
18            MR. SMITH:  Roger Smith for the plaintiffs.
19            THE COURT:  And I guess we have some folks on the
20   phone.  Good morning to you all.
21            MS. COOK:  Good morning, your Honor.  Shayna Cook
22   for the defense.
23            MR. SHEPHERD:  James Shepherd for the defendants.
24            MR. HARRINGTON:  William Harrington, your Honor,
25   for the defense.
```

Angela O'Donnell, RPR, 914-390-4025

1  contacting doctors, because that's going to come up, A, if
2  you want to make informal contact, and, B, as soon as we
3  have the IDP.
4        It has come to my attention that the scheduling
5  order that I issued for the rest of the year has the same
6  dates as Judge Martinotti and that was a mistake on my part.
7  It was our intention to continue the way it's been going,
8  which is, you go to him on the afternoon of day one and me
9  on the morning of day two. So we'll amend that. I don't
10 know how we managed to mess that up.
11       The agenda you sent me also talked about, you want
12 to talk about multi-plaintiff cases.
13       MS. COOK: Yes, your Honor. As I mentioned, there
14 are 431 served cases that have 645 plaintiffs. We tried to
15 count them. We think there are only 14 cases that have
16 multiple plaintiffs and multiple plaintiff cases are
17 improper joinder under Rule 20. Completely different facts
18 and claims do not arise out of the same transaction or
19 occurrence. I don't think the plaintiffs disagree with the
20 idea of severing these because part of the problem is that
21 it becomes very logistically difficult for the parties and
22 the Court. And, for example, one of the plaintiffs whose
23 case, several plaintiffs whose cases are bound to be
24 dismissed for failure to provide a plaintiff fact sheet are
25 part of a larger case, so then the question becomes what

Angela O'Donnell, RPR, 914-390-4025

1   happens with the dismissals of those plaintiffs when there's
2   five additional plaintiffs and is it a final dismissal, and
3   when we're selecting cases for the IDP and choosing perhaps
4   one plaintiff within a much larger 80-plaintiff complaint or
5   something.
6           So the question for the Court is just other MDLs
7   have dealt with this issue in different ways at one time or
8   another, because certainly when it comes time to remand, if
9   that becomes a time, then you would have to deal with it
10  then.  We ask that the Court, we wanted to bring it to the
11  Court's attention and ask for the Court to think about and
12  talk to the clerk's office about what would be the most
13  efficient for the Court to sever these cases without
14  creating as much hassle.  I mean, some MDLs dismiss all but
15  the first-name plaintiff and order each of the other
16  plaintiffs to file a separate amended complaint by a certain
17  date.  Others have just severed the separate plaintiffs and
18  given them new case numbers but not had them file new
19  complaints.  So we wanted to raise --
20          THE COURT:  We're talking about ballpark close to
21  200 cases?  Not cases but 200 plaintiffs.
22          MS. COOK:  Yes, it's over 200 plaintiffs, yes.
23          MR. MCCAULEY:  Your Honor, Ms. Cook's first remedy
24  as far as dismissing the cases we think is a little extreme.
25  It also should be known that all of these cases started as

1  state court actions.  They were not filed in federal court,
2  in any federal court, as a multiparty plaintiff's case.
3  They we removed by the defendants.  I believe they had all
4  been briefed on remand issues, and then the District Courts
5  made the determinations that the cases would be transferred
6  to the MDL.  These are not cases that are filed within the
7  federal system initially.
8           MS. COOK:  I don't think that's true, actually.
9           MR. MCCAULEY:  Oh, okay.  My understanding is they
10 were, sorry.
11          THE COURT:  Whatever.  Do you have a problem --
12 well, let me put it a different way.
13          Do you agree on the desirability of having one
14 number per plaintiff?  One document --
15          MR. MCCAULEY:  I'm cautious to say that before
16 your Honor, because it's a very similar discussion that
17 we've had -- yes.  The issue is we've had similar
18 discussions about direct filing in the clerk's office.
19 Mr. O'Donoghue and myself both admitted that this is one of
20 those sort of things we're punting to the bench, because
21 with the clerk's office we know that involving additional
22 numbers they have to go in and sever them.
23          THE COURT:  It would be burdensome to the clerk's
24 office but not as burdensome as direct filing, I don't
25 think.  And then I can issue an order saying, from now on

1   any case that gets transferred here, the parties have to do
2   something to separate the multiple plaintiffs before it gets
3   to me or something like that.
4       MR. MCCAULEY: But I have to be honest, your
5   Honor, that becomes an issue about how to do that, because,
6   as I said, many of these cases, my understanding was all,
7   but many of these cases would be filed initially in the
8   state court action under CAFA where they're properly filed.
9   The defendants move, there's a motion that's made. The
10  Court makes a determination that they shouldn't be remanded
11  and they come to you. I wouldn't even know where to begin
12  at that point where the CTO is issued to try to sever cases
13  at that time. Because they're properly transferred here in
14  the manner in which they're held on a single complaint which
15  was properly filed. We're willing to work with the clerk's
16  office. I guess this is my point. I know we're really
17  close in the Southern District because we now can do amended
18  complaints, and maybe that's a way to do it, we're allowed
19  to amend the complaints in the Southern District on ECF, but
20  I think that presupposes that there's an index number --
21  correct Mr. Harrington? -- that's already been given to the
22  case.
23      We're getting close to the 21st century, your
24  Honor, in the clerk's office.
25      THE COURT: Look, the one thing I would want, I

```
 1            THE COURT:  It makes sense for me to pony on that.
 2            Anything else today?
 3            MR. MCCAULEY:  No, your Honor.
 4            THE COURT:  All right, thank you for coming.  See
 5   you next month.
 6            (Proceedings concluded at 11:21 a.m.)
 7                     C E R T I F I C A T E
 8   I, Angela A. O'Donnell, certify that the foregoing is a
 9   correct transcript from the record of proceedings in the
10   above-entitled matter.
11            ------------------------------
12       Angela A. O'Donnell, RPR, Official Court Reporter
13   United States District Court, Southern District of New York
14
15
16
17
18
19
20
21
22
23
24
25
```